IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UTE INDIAN TRIBE OF THE UINTAH AND OURAY RESERVATION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> HONORABLE BARRY G. LAWRENCE, District Judge, Utah Third Judicial District, and LYNN D. BECKER, <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER DECLINING TO EXERCISE JURISDICTION** <br><br> Case No. 2:16-cv-00579 <br><br> Judge Clark Waddoups |

This case presents a clash between the parties' claims as to which court has jurisdiction over a state law contract dispute: the Ute Indian Tribal Court or the state courts of Utah. The dispute is between a non-Indian, Lynn Becker, and the Ute Indian Tribe of the Uintah and Ouray Reservation (the Tribe)[1] under a contract that includes express waivers of the Tribe's sovereign immunity and any requirement for exhaustion of remedies in the Tribal Court. The Tribe's Business Committee approved the contract by a resolution that incorporated the contract by reference. The Tribe was represented in the transaction by experienced and competent counsel. A tribal ordinance in force at the time expressly stated that the Tribal Court lacked jurisdiction over such a dispute with the Tribe. In connection with entering the contract with Becker, the Tribe adopted the Ute Energy Operating Agreement, amended three times, for which the Tribe requested and received certification from the United States Department of the Interior, Bureau of Indian Affairs, that no federal approval was required because it created no interest in trust lands

---

[1] The Plaintiffs in this matter also include the Uintah and Ouray Tribal Business Committee, Shaun Chapoose, former Chairman of the Tribal Business Committee, and Ute Energy Holdings, LLC. In this opinion the court refers to all the tribal parties as "the Tribe."

subject to approval. The Operating Agreements provided for the distribution of Ute Energy's profits and losses, a percentage to which Becker now claims he is entitled.

Becker alleges that, after he fully performed all obligations required by the contract, the Tribe refused to pay him according to the terms of the contract. After accepting full performance under the contract, and after a change in the makeup of the Business Committee, the Tribe now claims the contract was void from the beginning and that the express waivers, including waivers of sovereign immunity and tribal jurisdiction, have no effect. The dispute has now been pending in state court for more than three years and is set to begin a nine-day jury trial on February 20, 2018. The state court has heard and rejected the Tribe's arguments, finding that it has jurisdiction over the dispute, and the Tribe's requests for interlocutory appeals in the state appellate courts have been denied. Moreover, the issues of waiver and jurisdiction have been raised in three separate appeals to the Tenth Circuit, resulting in decisions that have left resolution of the jurisdictional dispute to this court in the first instance.

On remand from the Tenth Circuit, the Tribe now asks this court to enter a temporary restraining order and preliminary injunction precluding the state court from trying Becker's breach of contract claims. The United States Supreme Court, and other lesser courts, have provided strong guidance that this court should allow the state court to determine its own jurisdiction, except in the most extraordinary circumstances. This is particularly true when, as here, the underlying merits presented for declaratory judgment in this court are primarily federal defenses to the state law claims now poised for resolution by the state court. For the reasons set forth below, the court declines to exercise supplemental jurisdiction and stays this case pending resolution of the issues before the state court, the state courts of appeal, and any possible appeal

to the United States Supreme Court. Where such remedies are available to the parties, this court should refrain from becoming involved.

## FACTUAL AND PROCEDURAL BACKGROUND

Becker entered an independent contractor agreement (the contract) with the Tribe, effective 2004, to provide services related to the Tribe's development of its energy and mineral resources. (ECF No. 4-1.) The contract contains the following provisions:

> Article 21. Governing law and Forum. This Agreement and all disputes arising hereunder shall be subjected to, governed by and construed in accordance with the laws of the State of Utah. All disputes arising under or relating to this Agreement shall be resolved in the United States District Court for the District of Utah.
>
> . . .
>
> Article 23. Limited Waiver of Sovereign Immunity; Submission to Jurisdiction. If any Legal Proceeding (definition follows) should arise between the Parties hereto, the Tribe agrees to a limited waiver of the defense of sovereign immunity, to the extent such defense may be available, in order that such legal proceeding be heard and decided in accordance with the terms of this Agreement. . . . The Tribe specifically surrenders its sovereign power to the limited extent necessary to permit the full determination of questions of fact and law and the award of appropriate remedies in any Legal Proceeding.
>
> The Parties hereto unequivocally submit to the jurisdiction of the following courts: (i) U.S. District Court for the District of Utah, and appellate courts therefrom, and (ii) if, and only if, such courts also lack jurisdiction over such case, to any court of competent jurisdiction and associated appellate courts. . . . the Tribe waives any requirement of Tribal law stating that Tribal courts have exclusive original jurisdiction over all matters involving the Tribe and waives any requirement that such Legal Proceedings be brought in Tribal Court or that Tribal remedies be exhausted.

*(Id.)*

In February 2013, following a dispute concerning Becker's compensation under the contract, Becker sued the Tribe in the United States District Court for the District of Utah for breach of contract, breach of the covenant of good faith and fair dealing, and accounting claims. The Tribe moved to dismiss under Rules 12(b)(1) and 12(b)(6). Judge Dee Benson dismissed the

action, concluding that under the "well-pleaded complaint rule" Becker's causes of action were all state causes of action and thus the complaint did not meet the federal question requirement set forth in 28 U.S.C § 1331. *Becker v. Ute Indian Tribe of the Uintah & Ouray Reservation*, No. 2:13-cv-123-DB, 2013 WL 5954391, at *1 (D. Utah Nov. 5, 2013) (unpublished). Judge Benson noted that although the Tribe had raised defenses that posed federal questions, such as tribal sovereignty and approval by the Department of Interior, "the Supreme Court has repeatedly stated that there is no federal-question jurisdiction based solely on possible federal defenses." *Id*. (citing *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 808 (1986) ("A defense that raises a federal question is inadequate to confer federal jurisdiction.")).

The Tenth Circuit affirmed Judge Benson's decision. *Becker v. Ute Indian Tribe of the Uintah & Ouray Reservation,* 770 F.3d 944 (10th Cir. 2014). Citing both *Merrell Dow Pharmaceuticals* and *Oklahoma Tax Commission v. Graham*, 489 U.S. 838, 841 (1989), the Tenth Circuit held that "Becker's federal issues are merely federal defenses, which do not give rise to federal question jurisdiction under 28 U.S.C. § 1331." *Id*. at 947–48. The Tenth Circuit explained, "the Supreme Court has singled out tribal sovereign immunity as a type of federal defense that 'does not convert a suit otherwise arising under state law into one which, in the [§ 1331] sense, arises under federal law.'" *Id.* at 948 (citing *Graham*, 489 U.S. at 841). "This is because 'the underlying right or obligation arises only under state law and federal law is merely alleged as a barrier to its effectuation.'" *Id*. (citing *State of Okla. ex rel. Okla. Tax Comm'n v. Wyandotte Tribe of Okla*., 919 F.2d 1449, 1451 (10th Cir. 1990)).

In response to the rulings that the United States District Court for the District of Utah, which was designated by the contract to hear disputes in the first instance, lacked jurisdiction, Becker filed suit in the Third Judicial District Court of Salt Lake County (state court action) for

breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment. (ECF No. 67-3.) The Tribe moved to dismiss, and on July 23, 2015, Judge Barry Lawrence denied the Tribe's motion. Judge Lawrence found, in part, (1) that the independent contractor agreement "contained a clear and express waiver of sovereign immunity" and was "accompanied by the required Resolution in which the Tribal Business Committee resolved to enter the Agreement;" (2) that this process complied with Ute Law section 1-8-5; (3) that the Tribe contractually "consented to any court of competent jurisdiction and thus consented to suit in Utah;" and (4) that Public Law 280 does not prohibit "a non PL-280 State like Utah from having jurisdiction in a case where the Tribe has consented to jurisdiction." (Order Denying Mot. to Dismiss 2-3, ECF No. 67-4 (citing *C & L Enters., Inc. v. Citizen Band Indian Tribe*, 532 U.S. 411 (2001) (holding that a court in a non Public Law 280 state (Oklahoma) had jurisdiction to enter an order in a contract dispute between a private actor and a tribe)).)[2] The Tribe attempted to appeal the state court's order, but, in September 2015 the Utah Court of Appeals dismissed the appeal for lack of jurisdiction, citing the absence of a final appealable order. (*See* ECF No. 12 at ¶ 6.) On June 23, 2017, the Utah Supreme Court also denied a petition for writ of certiorari. *Becker v. Ute Indian Tribe*, 398 P.3d 54 (Utah 2017).

In June 2016—a year and a half after the state court action was remitted back to the Third District Court and discovery was initiated—the Tribe filed this action against Becker and Judge Lawrence in the United States District Court for the District of Utah, Judge Robert J. Shelby presiding. (ECF No. 2.) The Complaint alleges the Tribe is entitled to the following:

---

[2] *C & L Enterprises* involved a breach of contract between a tribe and a private contractor. 532 U.S. 411 (2001). The contract contained an arbitration provision and a choice-of-law clause. *Id.* at 415. Under those facts, the United States Supreme Court held the arbitration provision constituted a clear waiver of the tribe's sovereign immunity and remanded the matter back to the state court. *Id.* at 423.

(1) declaratory judgment that the state court lacks subject matter jurisdiction; (2) declaratory judgment finding the independent contract agreement void under federal and tribal law; (3) declaratory judgment that the Tribe did not waive sovereign immunity; and (4) injunctive relief enjoining the state court from further proceedings.[3] (*Id*.) The Tribe also filed a Motion for Temporary Restraining Order and Preliminary Injunction (Original TRO). (ECF No. 13.) The crux of the Tribe's Original TRO was that the contract is void because it was not approved by the Department of the Interior, and that the waiver of sovereignty provision is invalid because it was not approved by the Tribe's Business Committee, as required by tribal law. (*See id.*)

In response to the Tribe's federal complaint, Judge Lawrence filed a motion to dismiss. (ECF No. 12.) Judge Lawrence argued that several doctrines—including *Rooker-Feldman*, *Younger* and *Colorado River* abstention, judicial immunity, and Eleventh Amendment immunity—protected the state court from being sued in federal court, especially by a losing party complaining of injuries caused from state court judgments. (*See id*.) Becker likewise filed a motion to dismiss the Tribe's Complaint, incorporating by reference Judge Lawrence's arguments and alleging the court lacked subject matter jurisdiction under 28 U.S.C §§ 1331 and 1362. (ECF No. 19.)

In August 2016, Judge Shelby granted Becker's motion to dismiss for lack of subject matter jurisdiction after dismissing the Tribe's purported 42 U.S.C. § 1983 and § 1985 claims without prejudice. (ECF No. 40.) Judge Shelby expressly found that the lack of jurisdiction rendered the Tribe's Original TRO and Judge Lawrence's motion to dismiss moot. (*Id*. at 2.) The Tribe appealed.

---

[3] The Tribe filed an Amended Complaint four days after filing the original Complaint—but the claims remained unchanged. (*See* ECF No. 4.)

On appeal, Judge Lawrence argued that dismissal was appropriate under principles of judicial immunity and that the state court could review the Tribe's sovereign immunity and preemption arguments. Appellee Hon. Barry G. Lawrence's Br. 3, 11-14, *Ute Indian Tribe v. Lawrence*, No. 16-4154, (10th Cir. Dec. 5, 2016), No. 0109730643. Becker joined the appeal, arguing that the district court lacked § 1331 jurisdiction because the defenses of preemption and tribal sovereignty did not create a federal question. Br. of Appellee Lynn D. Becker 8-15, *Ute Indian Tribe v. Lawrence*, No. 16-4154, (10th Cir. Dec. 5, 2016), No. 01019730944.

The Tenth Circuit held oral argument on the Tribe's interlocutory appeal on January 18, 2017, after which Becker submitted supplemental briefs. First, Becker submitted a copy of a February 9, 2017 order Judge Lawrence issued denying the Tribe's motions for summary judgment. Rule 28(j) Notice of Significant Suppl. Authority, *Ute Indian Tribe v. Lawrence*, No. 16-4154, (10th Cir. Feb. 10, 2016), No. 01019763617.[4] Becker also submitted an order issued by the Tribal Court, wherein the Tribal Court determined it would decide whether the Tribe had waived the Tribal Court's jurisdiction. Order Denying OSC, *Ute Indian Tribe v. Lawrence*, No. 16-4154, (10th Cir. Jun. 14, 2016), No. 01019825134.

While the interlocutory appeal was pending, Judge Lawrence denied the Tribe's motion to stay the state court action. (Ruling & Order dated Mar. 22, 2017, ECF No. 67-7.) Judge Lawrence also denied the Tribe's Motions for Reconsideration. (Ruling & Order dated Sept. 15, 2017, ECF No. 67-8.) Judge Lawrence concluded:

> Defendants' Motions are just another attempt to have a second - actually a third or perhaps fourth - bite at the proverbial apple. That is not the purpose of any of the

---

[4] Judge Lawrence's ruling made the following determinations: (1) the Tribe expressly waived sovereign immunity under federal and tribal law; (2) the state court may properly exercise jurisdiction; and (3) the United States was not an indispensable party. Mem. Dec. & Order Denying Def.'s Mot. for Summ. J., *Ute Indian Tribe v. Lawrence*, No. 16-4154, (10th Cir. Feb. 10, 2016), No. 01019763618.

post-judgment Rules, and the Court is not persuaded that it should re-address any of its prior rulings.

(*Id.* at 6.)

In August 2017, the Tenth Circuit issued its first decision on the Tribe's interlocutory appeal. *Ute Indian Tribe v. Lawrence*, 868 F.3d 1189 (10th Cir. 2017), *rev'd en banc*, 875 F.3d 539 (10th Cir. 2017). This opinion stated in part:

> Of special relevance to our case is a federal statute[5]—Public Law 280, ch. 505, 67 Stat. 588 (1953) (codified as amended at 18 U.S.C. § 1162; 25 U.S.C. §§ 1321–1326; 28 U.S.C.§ 1360)—that, for most states, grants state-court jurisdiction over litigation arising in Indian country in which an Indian is a party only when certain actions are taken by a state or tribe.
>
> . . .
>
> Relevant to this case, Utah did not adopt the required legislation before the 1968 amendment and nothing in the record indicates that the Tribe has ever given consent to state-court jurisdiction. *See United States v. Felter*, 752 F.2d 1505, 1508 n.7 (10th Cir. 1985) ("Although Utah since has indicated its willingness to assume this jurisdiction, no Indian tribe has accepted its offer."); Cohen's Handbook of Federal Indian Law (Cohen) § 6.04[3][a], at 537–38 n.47 (Nell Jessup Newton ed., 2012) ("Utah has a post-1968 statute accepting jurisdiction when tribes consent . . . . No tribe has consented.").[6]
>
> Thus, it is clear that whether the state court has jurisdiction to hear Mr. Becker's claim is a matter of federal law. The only remaining question is whether the Tribe's suit seeking an injunction to halt the proceedings in state court is an action 'arising under' federal law (so that there is jurisdiction under 28 U.S.C. § 1331) or whether "the matter in controversy [in this suit] arises under" federal law (so that there is jurisdiction under 28 U.S.C. § 1362). The parties agree that the difference in language in the two statutes is immaterial to the issue before us. We hold that the jurisdictional predicate is satisfied.

*Id.*, No. 16-4154, slip op. at 6-8 (10th Cir. Aug. 25, 2017).

---

[5] In the Tenth Circuit's revised November 7, 2017 opinion remanding the case to the district court, this phrase was changed to: "Of particular relevance are decisions under a federal statute[.]" *Ute Indian Tribe v. Lawrence*, 875 F.3d 539, 542 (10th Cir. 2017).

[6] This entire paragraph was removed from the November 7, 2017 revised opinion. *Id.*

In contrast with the Tenth Circuit's decision affirming Judge Benson's decision in *Becker v. Ute Tribe*, 770 F.3d 944 (10th Cir. 2014), which was based on *Graham*, here the Tenth Circuit cited *National Farmers Union Insurance Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 851–52 (1985), as the controlling precedent.[7] *Ute Indian Tribe v. Lawrence*, 875 F.3d 539, 547 (10th Cir. 2017). The Tenth Circuit explained:

> We hold that the Tribe's claim—that federal law precludes state-court jurisdiction over a claim against Indians arising on the reservation—presents a federal question that sustains federal jurisdiction.
>
> . . .
>
> But there are two significant differences between *Graham* and our case. To begin with, sovereign immunity and a court's lack of subject-matter jurisdiction are different animals.
>
> . . .
>
> Rather than, as in this case, addressing an Indian challenge under federal law to the jurisdiction of a state court, *National Farmers* addressed a challenge by non-Indians that federal law barred a tribal court from hearing a suit against them. But that opinion's reasoning is directly applicable here: 'Because petitioners contend federal law has divested the Tribe of this aspect of sovereignty, it is federal law on which they rely as a basis for the asserted right of freedom from Tribal Court interference. *They have, therefore, filed an action 'arising under' federal law within the meaning of § 1331.*' *Nat'l Farmers Union*, 471 U.S. at 852–53, 105 S.Ct. 2447 (emphasis added). Here, the Tribe likewise relies on federal law 'as a basis for the asserted right of freedom from [state-court] interference.'

*Id*. at 540, 545–46. Then, in the final paragraphs of the opinion, the Tenth Circuit gave these directions:

---

[7] *National Farmers* was a tort action and did not involve sovereign immunity. 471 U.S. at 853. The questions before the Court were "whether an Indian Tribe retains the power to compel a non-Indian property owner to submit to the civil jurisdiction of a tribal court," and whether tribal exhaustion was required before a federal court could entertain the non-Indian's claim. *Id.* at 857. Under those circumstances the Court found "[t]he District Court correctly concluded that a federal court may determine under § 1331 whether a tribal court has exceeded the lawful limits of its jurisdiction." *Id*. at 853.

Finally, we recognize that there may be limitations on the district court's authority to enjoin ongoing state proceedings. But the defendants have not raised any such limitation on appeal, and *such issues can be addressed by the district court in the first instance*.[8]

I. CONCLUSION

We REVERSE and REMAND to the district court for further proceedings consistent with this opinion. In particular, the district court should address *in the first instance* whether the Tribe's claims for declaratory relief fall within its supplemental jurisdiction under 28 U.S.C. § 1367.

*Id*. at 548 (emphases added).

Becker filed a petition for rehearing en banc. In his motion, he argued that neither he nor the Tribe had cited Public Law 280 in their briefs and that the court's reliance on it was therefore misplaced. Appellee Lynn D. Becker's Pet. for Panel Rehearing, *Ute Indian Tribe v. Lawrence*, No. 16-4154, (10th Cir. Aug. 8, 2017), No. 01019867916. Becker again provided supplemental briefs. This time he provided the court with a copy of the Ute Tribal Court's 2011 ruling in *Yazzie v. Ute Indian Tribe*, Case No. CV-09-188. Rule 28(j) Notice of Significant Suppl. Authority, *Ute Indian Tribe v. Lawrence*, No. 16-4154, (10th Cir. Oct. 24, 2017), No. 01019890569. In *Yazzie*, the Tribal Court held that Tribal Ordinance 87-04, which was in effect at the time the contract with Becker was executed, deprived the Ute Tribal Court of jurisdiction over claims against the Tribe. *Id.* at 5.

On November 7, 2017, the Tenth Circuit denied Becker's request for rehearing and remanded the case to the district court. *Ute Indian Tribe v. Lawrence*, 875 F.3d 539 (10th Cir.

---

[8] In a footnote, the Tenth Circuit acknowledged Becker's argument that federal courts should defer to a state court's determination of its own jurisdiction. But, based on considerations of comity, the Tenth Circuit declined to address the argument, noting that the issue "should be left to the federal district court to resolve on remand" because the issue did not impact the jurisdictional holding. *Id*. at 548 n.6.

2017). Notwithstanding its denial of rehearing, the Court revised its August 2017 decision, adding the following footnote:

> [T]here may be a question whether Public Law 280 applies to suits against tribes, as opposed to individual Indians. We need not resolve that issue or the applicability of the other laws relied on by the Tribe as depriving the state court of subject-matter jurisdiction. The point is only that the federal district court had jurisdiction to decide the issue of state-court subject-matter jurisdiction. *How to decide that question is left for the district court to decide in the first instance on remand.*

*Id.* at 546 n.4 (emphasis added).

Thus, the Court resolved that federal jurisdiction exists over the question of whether the state court had jurisdiction, but left open the question of whether and how the district court should decide the issue of declaratory and injunctive relief regarding the state court's exercise of jurisdiction. Following remand on November 29, 2017, Judge Shelby recused and the case was assigned to Judge Jill Parrish, who also recused. On December 6, 2017, the case was reassigned to this court. (ECF Nos. 50, 51.) One day later, December 7, 2017, the Tribe filed 868 pages of memoranda and appendices consisting of four motions: two expedited motions for summary judgment and for interim and permanent injunctions on grounds of federal preemption, infringement of tribal sovereignty, the state court's lack of subject matter jurisdiction, illegality of the agreement, and illegality of the waiver of sovereign immunity provision within the agreement, (ECF Nos. 52, 53); an Emergency Motion for Injunctive Relief under Rule 56 to permanently "enjoin" the state court action, (ECF Nos. 54, 55); and a Verified Motion to Expedite Briefing and Rulings on the Ute Tribe's Motions for a Temporary Restraining Order and Preliminary Injunction, (ECF No. 57).

A week later, on December 14, 2017, this court issued an Order Requesting Supplemental Briefing. (ECF No. 58.) The order states, in part:

Plaintiffs have filed two motions for summary judgment and an Emergency and Expedited Motion for Injunctive Relief. *See* ECF Nos. 52, 53 & 54. The thrust of Plaintiffs' request for relief is their position that Utah state court lacks subject-matter jurisdiction over Mr. Becker's claims and/or the independent contractor agreement between Mr. Becker and the Ute Tribe is void *ab initio* under federal and Ute tribal law. *See* ECF Nos. 52 and 53, generally.

In its decision and order on remand, the Tenth Circuit stated that the issue of whether "federal courts should defer to a state court's determination of its own jurisdiction" should be left to the federal district court to resolve on remand[.] To resolve this question, the court must address whether it has supplemental jurisdiction under 28 U.S.C. § 1367 and if so, whether the court should decline to exercise supplemental jurisdiction under subsection (c). In the interest of judicial efficiency, the court believes these two issues must be resolved before the court addresses the issues raised in the Plaintiff's pending motions.

Plaintiffs are to provide their supplemental brief on or before Friday, December 29, 2017. Defendants are to provide their responsive supplemental brief on or before Friday, January 12, 2018.

*Id*. Despite the court's order, the Tribe filed a "Request to Set a Hearing Date No Later than 1/17/2018 on Plaintiff's Verified Emergency and Expedited Motion for Injunctive Relief Filed Four Weeks Ago Today on 12/7/2017," as well as a request to submit for decision on its three pending motions for summary judgment and injunctive relief. (ECF Nos. 60, 65.) No responsive memoranda had been filed and none were yet due. Strikingly, the Tribe's response to the court's December 14, 2017 order did not address the issue of supplemental jurisdiction under § 1367(c).[9] (*See* ECF No. 59.) Becker's response brief, however, followed the court's instructions. (ECF No. 67.)

On January 17, 2018, the court held a hearing on the issue of supplemental jurisdiction. (ECF No. 70.) The court found that it had jurisdiction pursuant to the Tenth Circuit's November 7, 2017 decision that "the Tribe's claim—that federal law precludes state-court jurisdiction over

---

[9] Instead, the Tribe reasserted its arguments regarding Public Law 280 and sovereign immunity and argued that *Yazzie v. Ute Indian Tribe*, Case No. CV-09-188 ("Ruling on Motion to Alter or Amend Judgment"), has no "effect whatsoever" in this matter.

a claim against Indians arising on a reservation—presents a federal question that sustains federal jurisdiction" under §§ 1331 and 1362. *Ute Indian Tribe*, 875 F.3d at 540. Next, considering the Tenth Circuit's specific instruction on remand, the court addressed "whether the Tribe's claims for declaratory relief fall within its supplemental jurisdiction under 28 U.S.C. § 1367." *Id.* at 548. After considering the parties' briefs, the record, relevant legal authority, and oral argument, the court concluded the Tribe's claims for declaratory and injunctive relief are defenses to state law claims and do not create federal-question jurisdiction, except under 28 U.S.C. § 1367. Next, the court declined to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(4), and stayed this matter pending resolution of the state court action, including possible appeals in the appellate courts. The court stated it would issue this Memorandum Decision to further explain its ruling.

## ANALYSIS

### I. The Court Declines to Exercise Supplemental Jurisdiction Under § 1367(c)(4).

"The district courts of the United States . . . are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute. . . ." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005) (internal quotation marks omitted) (explaining that once a case is removed, the district court has original jurisdiction over the federal-law claims and supplemental jurisdiction under § 1367(a) over the state-law claims). The United States Supreme Court has explained:

> Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, *it is the character of the threatened action, and not of the defense,* which will determine whether there is federal-question jurisdiction in the District Court. If the cause of action, which the declaratory defendant threatens to assert, does not itself involve a claim under federal law, it is doubtful if a federal court may entertain an action for a declaratory judgment establishing a defense to that claim. This is dubious even though the declaratory complaint sets forth a claim of federal right, if that right is in reality in the nature of a defense to a threatened cause of action. Federal

courts will not seize litigations from state courts merely because one, normally a defendant, goes to federal court to begin his federal-law defense before the state court begins the case under state law.

*Pub. Serv. Comm'n of Utah v. Wycoff Co., Inc.*, 344 U.S. 237, 248 (1952) (emphasis added). *See also Graham*, 489 U.S. at 840 (holding that "a complaint must on its face present a federal claim" to establish federal-question jurisdiction under § 1331).[10]

Based on the claims in the Tribe's Amended Complaint—for declaratory and injunctive relief from the state court action—this court concludes it has supplemental jurisdiction over the Tribe's alleged federal defenses to the pending state-law claims. But supplemental jurisdiction is a "doctrine of discretion, not of plaintiff's right." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). Accordingly, § 1367(c)(4) allows district courts to decline to exercise supplemental jurisdiction "in exceptional circumstances."

Here, several facts contribute to the court finding "exceptional circumstances": (1) the state court action was filed in December 2014, eighteen months before this action was filed; (2) the Tribe filed this action only after adverse rulings in the state court action; (3) the state court action is ongoing, with a trial set to commence in about three weeks, and the state court has invested significant time and resources in this matter; (4) Judge Lawrence has already addressed and decided most, if not all, the issues this court would be asked to decide in the exercise of its supplemental jurisdiction; (5) Judge Lawrence is well-positioned to decide, or has already decided, the dominant state-law issues governing the parties' claims and defenses, as well as the Tribe's defenses asserted under federal and tribal law; (6) the remaining issues to be decided are

---

[10] In *Graham*, the Court explained: "Tribal immunity may provide a federal defense to Oklahoma's claims . . . But it has long been settled that the existence of a federal immunity to the claims asserted does not convert a suit otherwise arising under state law into one which, in the statutory sense, arises under federal law." *Okla. Tax Comm'n v. Graham*, 489 U.S. 838, 841 (1989).

best resolved upon a full trial before a jury; and (7) the Tribe has remedies in the state court system to challenge any errors they believe the trial court may have made.

The doctrine of judicial estoppel also supports this court's decision to decline to exercise supplemental jurisdiction under § 1367(c)(4). "[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). "Because the rule is intended to prevent improper use of judicial machinery, judicial estoppel is an equitable doctrine invoked by a court at its discretion[.]" *Id.* at 750 (internal quotation marks and citations omitted). The court's discretion is informed by factors including whether "a party's later position" is "clearly inconsistent with its earlier position," and whether "the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled." *Id.* (internal quotation marks omitted). The court also evaluates whether "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 751.

Here, the tribe's position is inconsistent with its past positions. Four years ago when Becker filed his action in federal court, the Tribe argued this court lacked subject-matter jurisdiction. Accordingly, Judge Benson granted the Tribe's motion to dismiss, and his ruling was affirmed by the Tenth Circuit. Now, after losing several dispositive motions in the state court action—and on the eve of trial—the Tribe argues the polar opposite, averring this court does have subject-matter jurisdiction to adjudicate its defenses to Becker's same breach of

contract claims. This flip-flopping of positions and the unfair advantage it would give the Tribe supports the court declining to exercise supplemental jurisdiction.

## II. *Younger* **Abstention Applies**

Notwithstanding the issues of jurisdiction, *Younger* abstention supports the court's decision not to interfere with the state court proceeding. In *Younger v. Harris*, the Court explained that abstention honors the "notion of comity" and "proper respect for state functions." 401 U.S. 37, 44 (1971). "Since the beginning of this country's history Congress has, subject to few exceptions, manifested a desire to permit state courts to try state cases free from interference by federal courts." *Id*. at 43. "This underlying reason for restraining courts of equity from interfering with [state actions] is reinforced by . . . the notion of comity." *Id*. at 44. In *Younger*, the Supreme Court defined "comity" as follows:

> a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.

*Id. Younger* abstention applies when "three elements [are] present: (1) interference with an ongoing state judicial proceeding; (2) involvement of important state interests; and (3) an adequate opportunity afforded in the state court proceedings to raise the federal claims." *N. Natural Gas Co. v. Trans Pacific Oil Corp.*, 529 F. 3d 1248, 1252 (10th Cir. 2008).

Here, it is undisputed there is an ongoing state judicial proceeding. The state court action was filed eighteen months before this action was filed. Judge Lawrence has issued several orders addressing the Tribe's defenses of tribal sovereignty, exhaustion, Public Law 280, and lack of federal approval. Indeed, the state action is set for trial in about three weeks. At its core, the Tribe's "requested declaratory and injunctive relief, if granted, would have the effect of enjoining state court proceedings or reviewing issues already reached by the state court." *Shingle*

*Springs Band of Miwok Indians v. Sharp Image Gaming, Inc.*, No. 2:10-cv-01396 FCD GGH, 2010 WL 4054232, at \*16 (E.D. Cal. Oct. 15, 2010) (unpublished).[11] Thus, the first element of *Younger* abstention is present here.

Next, *Younger* applies where "the interpretation and application of state common law implicates important state interests." *Id.* at \*17 (citing *R.R. Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 499–500 (1941) ("[T]he interpretation of state law comes from the state's highest court."). Here, the pending state court action involves common law breach of contract claims of a contract that expressly adopts Utah law. How the contractual provisions are interpreted— including the questions of whether the Tribe validly waived sovereign immunity and whether the Tribal Court can exercise jurisdiction given Tribal Ordinance 87-04 and the *Yazzie* decision— implicates "important state interests." Judge Lawrence has interpreted contractual obligations between a tribe and a non-Indian within the state's borders. Given that tribes engage in all manner of transactions with non-Indian individuals and corporations in Utah, it is an "important state interest" for these parties to know how the state will interpret and enforce sovereign immunity and exhaustion waiver clauses in these transactions. Accordingly, the second element of *Younger* abstention is met.

Finally, the state court provides an adequate forum for the Tribe to raise all of its claims and defenses. "[A] federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987). Here, the Tribe has raised preemption and sovereignty as federal defenses to the state court action. If the Tribe is dissatisfied upon resolution of the state court action, it can appeal to the Utah Court of Appeals and the Utah Supreme Court. If dissatisfied with those

---

[11] This and all other unpublished decisions are not precedential, but are cited for their persuasive value. *See* Fed. R. App. 32.1; 10th Cir. App. R. 32.1.

actions, "ultimately[, the Tribe can] file a petition for review in the United States Supreme Court." *Shingle Springs*, 2010 WL 4054232, at *17; *see also Tunica-Biloxi Tribe of Louisiana v. Warburton/Buttner*, No. Civ.A. 04-1516RBW, 2005 WL 1902889, at *3 (D.D.C. Jul. 20, 2005) (unpublished) (holding the third *Younger* element was satisfied where the tribe could raise preemption as a defense in the state court, appeal through the state system, and ultimately file a petition for review with the United States Supreme Court).[12]  Thus, the third *Younger* element is met and the doctrine supports deferral to the state court. *See Colo. Water Conservation Dist. v. United States*, 424 U.S. 800, 817 n.22 (1976) (stating that once the *Younger* elements are met, a federal court has no discretion to grant injunctive relief against state proceedings). Under *Younger* abstention doctrine, strong public policy and principles of federalism support that the federal courts should defer to the state courts to determine their own jurisdiction.[13]

### III. The Relief Sought Is Barred Under the Anti-Injunction Act.

In addition to the *Younger* abstention doctrine, the court's decision to defer to the state court is supported by the Anti-Injunction Act ("the Act"). The Supreme Court has explained the purpose of the Act as follows:

> When this Nation was established by the Constitution, each State surrendered only a part of its sovereign power to the national government. . . . One of the reserved powers was the maintenance of state judicial systems for the decision of legal controversies. . . . Obviously this dual system could not function if state and federal courts were free to fight each other for control of a particular case.

---

[12] In *Tunica-Biloxi*, the tribe also sought an injunction in federal district court prohibiting the defendants, non-Indians, from litigating a breach of contract claim in state court. 2005 WL 1902889. The tribe argued the contract was void because it lacked necessary federal approval under the Indian Gaming Regulatory Act. *Id.* at *1. Applying the *Younger* abstention doctrine, the federal district court dismissed the case. *Id.* at *3.

[13] The fact that this dispute has also involved the principle of quasi-sovereignty enjoyed by the Tribe does not change the long-standing principle that in our system the courts must respect the rulings of co-equal courts. This is especially true where, as here, the parties have a full opportunity to present their claims and defenses in those courts and to challenge any adverse rulings on appeal.

*Atl. Coast Line R.R. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 285–86 (1970). "In effectuating the fundamental and vital role of comity in the formation of this country's government, [the Act] 'is an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of the three specifically defined exceptions.'" *Shingle Springs*, 2010 WL 4054232, at *6 (citing *Atl. Coast Line*, 398 U.S. at 285); *see also Mitchum v. Foster*, 407 U.S. 225, 229 (1972) (holding that "any injunction against state court proceedings otherwise proper under general equitable principles must be based on one of the specific statutory exceptions to § 2283 if it is to be upheld"). The Act provides as follows:

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C § 2283. The court will now address each of these exceptions.

To qualify as an "expressly authorized" exception, "an Act of Congress must have created a specific and uniquely federal right or remedy, enforceable in a federal court of equity, that could be frustrated if the federal court were not empowered to enjoin a state court proceeding." *Mitchum*, 407 U.S. at 237. The "federal law need not contain an express reference to [the Act]." *Id*. The test is "whether an Act of Congress, clearly creating a federal right or remedy enforceable in a federal court of equity, could be given its intended scope only by the stay of a state court proceeding." *Id*. at 238. Finally, the Supreme Court has cautioned that "the exceptions should not be enlarged by loose statutory construction." *Atl. Coast Line*, 398 U.S. at 287.

The Tribe did not address the Act in any of its briefs in this action. It did, however, address it in the companion case of *Becker v. Ute Indian Tribe of the Uintah & Ouray Reservation*, No. 2:16-cv-958-CW (D. Utah Sept. 14, 2016), ECF No. 75. There the Tribe

argued, "[n]o Act of Congress and no Supreme Court precedent authorizes Judge Lawrence's continued assertion of state jurisdiction." *Id*. at 9. And, on remand here the Tribe has aggressively argued, under the mandate rule, that the Tenth Circuit has already determined this action is "expressly authorized" under § 1331. (*See, e.g*., ECF No. 69.) As explained above this court finds, however, its jurisdiction to decide the merits of the Tribe's declaratory judgment claims is based solely on supplemental jurisdiction under § 1367, which it has declined to exercise. *See, e.g.*, *C & L Enters.*, 532 U.S. at 1597 (holding that a contract's arbitration requirement was sufficient to waive the tribe's sovereign immunity and support remand to the state court); *see also Shingle Springs*, 2010 WL 4054232, at *14 (finding a simple contract dispute between a tribe and a California corporation did not give rise to § 1362 jurisdiction); *Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians*, 862 F. Supp. 995, 1001 (W.D. N.Y. 1994) (citing *Graham* in concluding the tribe's suit in federal court seeking a declaration of its obligation under a franchise agreement did not give rise to § 1331 jurisdiction). Based on the circumstances here and this case law, the court finds the "expressly authorized" exception does not apply.

The "necessary in aid" exception also does not apply. Contrary to the Tribe's position, the mere existence of a parallel state action involving the defenses of tribal preemption and "interference with tribal sovereignty" does not meet this exception. The Supreme Court has explained:

> [A] federal court does not have inherent power to ignore the limitations of § 2283 and to enjoin state court proceedings merely because those proceedings interfere with a protected federal right or invade an area pre-empted by federal law, even when the interference is unmistakably clear. . . . Rather, when a state proceeding presents a federal issue, even pre-emption, the proper course is to seek resolution of that issue by the state court.

*Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 149–50 (1988) (citing *Atl. Coast Line*, 398 U.S. at 294). Accordingly, the Tribe must exhaust its federal defenses in the state court, and the "necessary in aid" exception does not apply here.

Next, the Tribe argues this court has an obligation to "protect and effectuate judgments entered" in this case and four others involving the Tribe. *See Becker*, No. 2:16-cv-958-CW, ECF No. 75 at 10 n.10. Notably, the four cases the Tribe cites are distinct from this one because they involved disputes over the exterior boundaries of the reservation and/or prosecution of traffic offenses on tribal land. Thus, any judgments in those cases do not apply to this matter, which involves a contract dispute over payment for services to a non-Indian. Moreover, there is no final judgment for the court to "protect and effectuate" in this case. Thus, this exception does not apply.

Because the court concludes the relief sought by the Tribe falls within the purview of the Act, and none of the narrow exceptions to the Act apply, the court may not enjoin the state court or issue any rulings on the pending motions that have the effect of enjoining the state court.

Finally, the decision to defer to the state court is supported by serious questions about the underlying merits of the equitable relief the Tribe seeks. "The grant of a preliminary injunction is within the sound discretion of the district court."[14] *Kiowa Indian Tribe of Okla. v. Hoover*, 150 F.3d 1163, 1171 (10th Cir. 1998). The court may issue a preliminary injunction if the movant shows the following:

> (1) the movant will suffer irreparable harm unless the injunction issues; (2) there is a substantial likelihood the movant ultimately will prevail on the

---

[14] The court does not and has not ruled on any of the Tribe's motions for temporary or preliminary relief. All of those motions require a much fuller development of the facts, probably at trial, to be decided on the merits. But the preliminary review of facts necessary for the court to reach the decision to defer to the state court suggests serious weaknesses in the Tribe's arguments.

merits; (3) the threatened injury to the movant outweighs any harm the proposed injunction may cause the opposing party; and (4) the injunction would not be contrary to the public interest.

*Id.* The court concludes there are serious concerns about whether these conditions would likely be met here.

First, the Tribe will not suffer irreparable harm because it can address (and has addressed) all of its federal defenses in the state court action. Second, there is a serious question of whether the Tribe is likely to prevail on the merits. The question of this court's alleged original jurisdiction is inextricably related to whether the contract contains a valid waiver of sovereignty, preemption, tribal exhaustion, and the applicability of Public Law 280—all involving state-law issues that Judge Lawrence is better suited to decide. This is true because the Tribe has yet to offer an explanation for how the Tribal Court has jurisdiction over a dispute expressly precluded by an ordinance in place at the time the contract was entered[15] and by the Tribal Court decision in *Yazzie* about the effect of this ordinance. *Yazzie v. Ute Indian Tribe*, Case No. CV-09-188, at 3 (holding that where Ordinance 87-04 divested the Ute Tribal Court of jurisdiction over claims against the Tribe, "a tribal ordinance is required to amend the Law and Order Code to restore the Ute Tribal Court's jurisdiction over claims brought against the Tribe and its officers"). Those issues are best left for the state court to decide after trial and upon full

---

[15] Tribal Ordinance No. 87-04(B)(1) dated November 16, 1987 states:

> The Courts of the Ute Indian Tribe shall not have jurisdiction to hear claims against the Ute Indian Tribe of the Uintah and Ouray Reservation, the Tribal Business Committee of the Uintah and Ouray Reservation or any Tribal officers or employees in their official capacities, except that the Ute Indian Tribal Court shall have jurisdiction to hear actions brought by the Ute Indian Tribe against the bonds of officers or employees and actions against officers or employees for restitution of Tribal money, property or services wrongfully converted to their personal benefit.

*Becker*, No. 2:16-cv-958-CW, ECF No. 70-2.

presentation of the evidence. Third, if this court decides these issues now, Becker, the opposing party, would suffer irreparable harm given the advanced stage of the state court action, including the upcoming trial. Fourth, the public interest weighs strongly in favor of allowing the state court to determine its own jurisdiction and determine the enforceability of the contract, especially given that Judge Lawrence can address any and all federal issues raised by the parties.

For these reasons, the court declines to exercise supplemental jurisdiction under § 1367 or address any of the Tribe's pending motions. Instead, the court stays this matter pending resolution of these issues in the state court, including any appellate proceedings.

DATED this 31st day of January, 2018.

BY THE COURT:

_____
Clark Waddoups
United States District Court