IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UTE INDIAN TRIBE OF THE UINTAH & OURAY RESERVATION, a federally recognized Indian Tribe and a federally chartered corporation, the UINTAH AND OURAY TRIBAL BUSINESS COMMITTEE, and UTE ENERGY HOLDINGS LLC, a Delaware LLC,<br><br>Plaintiffs,<br><br>v.<br><br>HONORABLE BARRY G. LAWRENCE, District Judge, Utah Third Judicial District Court, in his Individual and Official Capacities, and LYNN D. BECKER,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:16-cv-00579-TC<br><br>District Judge Tena Campbell |

Following the Tenth Circuit's remand order in <u>Ute Indian Tribe of the Uintah & Ouray Reservation v. Lawrence</u> (<u>Lawrence II</u>), 22 F.4th 892 (10th Cir. 2022), the court denied the Tribe's request for attorneys' fees under 42 U.S.C. § 1988. (ECF No. 239.) With no outstanding claims or issues to decide, the court entered a permanent injunction and final judgment. (ECF Nos. 240 & 241.) Now the Tribe seeks to resurrect its § 1983 claim (and thereby its entitlement to § 1988 attorneys' fees) by first reopening the judgment and then amending its complaint. (ECF Nos. 244 & 243.) The Tribe also wants the judgment amended to include the $11,774.66 and $2,028.00 in costs taxed against Defendant Lynn D. Becker. (ECF Nos. 241 & 242.)

The Tribe's proposed second amended complaint removed its claims for injunctive and declaratory relief, leaving only a § 1983 claim against Defendant Judge Barry G. Lawrence, yet it still named Mr. Becker as a defendant. (<u>See</u> Mot. to Amend Compl. Ex. 2 (Initial Proposed Second Am. Compl.), ECF No. 243-2.) Impelled by the unusual request to amend the complaint six years

after the case was filed, the court ordered supplemental briefing on three issues. First, the court asked whether an amended complaint would undo any of its prior orders—including the permanent injunction it entered on February 28, 2022—and whether Mr. Becker could remain a defendant despite there being no pending claims against him.[1] Second, the court asked about Judge Lawrence's potential immunity under the Eleventh Amendment. Third, the court asked whether Plaintiff Shaun Chapoose and the Tribe in its corporate capacity were "persons" under § 1983. (See Suppl. Br. Order, ECF No. 258.) The parties have since fully briefed these issues. (ECF Nos. 263, 264, 268 & 269.)

For the following reasons, the court DENIES both pending motions.

## I. Motion to Reopen Judgment

The Tribe filed a "Rule 59 motion for reconsideration, or to alter or amend judgment, or alternatively, a Rule 60 motion to reopen judgment." (ECF No. 244.) It cites two grounds for relief. First, the court "prematurely" entered judgment because it did not wait for the Tribe's costs to be taxed by the Clerk of Court. Second, the court denied the Tribe's motion for attorneys' fees without allowing the "adversarial process" to play out. The Tribe filed this motion contemporaneously with its motion to amend its complaint to (better) state a claim under § 1983. Functionally, the Tribe needs the judgment reopened before it can amend its complaint and pursue a new § 1983 claim.

Relief under Rule 59(e) is appropriate when "the court has misapprehended the facts, a party's position, or the controlling law." Nelson v. City of Albuquerque, 921 F.3d 925, 929 (10th Cir. 2019) (quoting Servants of Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir. 2000)).

---

[1] In response to the supplemental-briefing order, the Tribe modified its proposed second amended complaint to reincorporate those injunctive and declaratory claims. (See Notice of Withdrawal & Substitution Ex. 1 (Revised Proposed Second Am. Compl.), ECF No. 262-1.)

2

Similarly, relief under Rule 60(b)(1) requires showing that "the judge has made a substantive mistake of law or fact in the final judgment or order." Cashner v. Freedom Stores, Inc., 98 F.3d 572, 576 (10th Cir. 1996).

"A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree." 28 U.S.C. § 1920; see also DUCivR 54-2(c) ("Costs taxed by the clerk will be included in the judgment or decree."). Here, the Clerk of Court already included the Tribe's costs in the judgment. (See ECF No. 242 at 1 ("Total costs allowed for Plaintiffs are $11,774.66 and are included in the Judgment.").) Even setting that aside, the court does not need to amend the judgment to include the already-taxed costs. Rule 54 draws "[a] sharp distinction between the judgment on the merits and an award of costs." Buchanan v. Stanships, Inc., 485 U.S. 265, 268 (1988). And Rule 58 instructs that "the entry of judgment may not be delayed . . . in order to tax costs or award fees." Fed. R. Civ. P. 58(e).

Simply put, "the entry of judgment and the taxation of costs are entirely separate legal acts," and "a motion for costs is not properly one to alter or amend the judgment under Rule 59(e)." 11 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2781 (3d ed.) (citing Md. Cas. Co. v. Jacobson, 37 F.R.D. 427, 430 (W.D. Mo. 1965)); 10 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2679 (4th ed.) (citing Samaad v. City of Dall., 922 F.2d 216 (5th Cir. 1991)). The court did not err by entering judgment before the Tribe's costs were taxed.

The court also did not err when it denied the motion for attorneys' fees without waiting for Judge Lawrence or Mr. Becker to respond. There were two alternative reasons for the court's decision. First, the Tribe could not "'prevail[]' on its § 1983 claim because it '[proceeded] in its sovereign capacity, not as a "person" within the meaning of § 1983.'" (ECF No. 239 at 2 (quoting

3

Becker v. Ute Indian Tribe of the Uintah & Ouray Rsrv. (Becker II), 868 F.3d 1199, 1206 (10th Cir. 2017).)  Second, the Tribe had "waived its § 1983 argument by 'not challeng[ing] this ruling on appeal.'"  (Id. (quoting Ute Indian Tribe of the Uintah & Ouray Rsrv. v. Lawrence (Lawrence I), 875 F.3d 539, 541 n.2 (10th Cir. 2017).)  There was no need to wait for the Defendants to announce their opposition to the Tribe's motion or to identify these two obvious issues.  Because the Tribe has not shown its entitlement to relief under Rule 59 or Rule 60, the court will deny the Tribe's motion.  (ECF No. 244.)

## II. Motion to Amend Complaint

The Tribe also moved to amend its amended complaint.  (ECF No. 243.)  In the Tribe's revised proposed second amended complaint, there are new facts to "correct the pleading deficiencies" identified in Becker II, 868 F.3d at 1206.  (Mot. to Amend at 8, ECF No. 243.)  For example, the new complaint emphasizes the Tribe's "two separate and distinct capacities": its sovereign capacity and its corporate capacity.  (Id.)  It also highlights two other key interests, those of Mr. Chapoose, the Chairman of the Ute Indian Tribal Business Committee, and those of all other Tribal members.  (See id. at 9–10.)  Taken together, these changes purportedly correct the issue raised in the court's prior ruling (that the Tribe was not a "'person' within the meaning of § 1983").  (ECF No. 239 at 2 (quoting Becker II, 868 F.3d at 1206).)

"The court should freely give leave [to amend a complaint] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  But the court may deny leave if it finds "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of [the] amendment."  Hasan v. AIG Prop. Cas. Co., 935 F.3d 1092, 1101–02 (10th Cir. 2019) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).  Here, the court concludes that the

Tribe's proposed amendment would be futile, as it "would not survive a motion for summary judgment." Watson ex rel. Watson v. Beckel, 242 F.3d 1237, 1240 (10th Cir. 2001).[2]

To start, the Tribe has conceded that it cannot state a § 1983 claim against Mr. Becker. (Reply at 2, ECF No. 253.) It instead seeks to hold Judge Lawrence, in his personal and official capacities, liable for presiding over the Becker state-court suit, which supposedly violated the Tribe's, Mr. Chapoose's, and the other Tribal members' federal rights. (See generally Revised Proposed Second Am. Compl., ECF No. 262-1.) Within the Tribe's § 1983 claim is an implicit § 1988 claim for attorneys' fees and expert witness fees. These fees are unavailable against a judge unless the judge clearly exceeded his jurisdiction. § 1988(b). Judge Lawrence raises the twin defenses of judicial immunity and the Eleventh Amendment. The court agrees with Judge Lawrence and finds that the Tribe's proposed § 1983 claim against him would not survive a motion for summary judgment, as it is barred by both judicial immunity and the Eleventh Amendment.

### A. Judicial Immunity for the Personal-Capacity Claim

Judicial immunity, which "applies only to personal capacity claims," Crowe & Dunlevy, P.C. v. Stidham, 640 F.3d 1140, 1156 (10th Cir. 2011) (citing Kentucky v. Graham, 473 U.S. 159, 166–67 (1985)), "is an immunity from suit, not just from ultimate assessment of damages." Mireles v. Waco, 502 U.S. 9, 11 (1991) (citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). This broad immunity has two exceptions. A judge is not immune from liability for "actions not taken in the judge's judicial capacity," nor is a judge immune for "actions, though judicial in nature, taken in the complete absence of all jurisdiction." Id. (citing Stump v. Sparkman, 435 U.S. 349, 360 (1978)). Because Judge Lawrence's presiding over the Becker state-court suit was a

---

[2] Given that final judgment has already been entered in this nearly six-year-old case, there also may well be undue delay and prejudice here.

5

quintessential judicial action, only the second exception is at issue here. The question is whether Judge Lawrence acted "in the complete absence of all jurisdiction"—that is, "clearly without any colorable claim of jurisdiction." Snell v. Tunnell, 920 F.2d 673, 686 (10th Cir. 1990) (citing Sparkman, 435 U.S. at 356–57). The Sparkman Court distinguished between "lack of jurisdiction" and "excess of jurisdiction." 435 U.S. at 356 n.7. A probate judge who tries a criminal case lacks jurisdiction (and would not be immune from liability), while a criminal judge who convicts a defendant of a nonexistent crime exceeds his jurisdiction (and would be immune). Id. (citing Bradley v. Fisher, 80 U.S. 335, 352 (1871)).

Utah district courts have "original jurisdiction in all matters civil and criminal," Utah Code Ann. § 78A-5-102(2), though the State has disclaimed Indian lands like the Uintah and Ouray Indian Reservation. See Utah Const. art. III, ord. 2; State v. Gardner, 844 P.2d 293, 298 (Utah 1992). And "state adjudicative authority over Indians for on-reservation conduct is greatly limited by federal law." Lawrence I, 875 F.3d at 542. The Tenth Circuit ultimately held that the Utah state court lacked subject-matter jurisdiction over Mr. Becker's suit because (1) Mr. Becker's claims arose on the reservation and (2) the Tribe did not hold a special election under 25 U.S.C. § 1326. Lawrence II, 22 F.4th at 906–07. Part of the confusion throughout this case can be traced to conflating the Tribe's sovereign immunity with the state court's subject-matter jurisdiction. See Lawrence I, 875 F.3d at 545.

Judge Lawrence's actions in concluding that Tribe had waived its sovereign immunity and consented to suit in Utah in its contract with Mr. Becker more closely resemble those of a judge exceeding his jurisdiction, not one acting without jurisdiction. It would be unfair to hold him (and the State) liable for hundreds of thousands of dollars in attorneys' fees because he reached the wrong result. This is especially true here. Despite the seemingly clear resolution in Lawrence II,

6

at least four judges along the way thought that state-court jurisdiction might exist. See <u>Lawrence II</u>, 22 F.4th at 915–16 (Briscoe, J., dissenting); <u>Ute Indian Tribe of the Uintah & Ouray Rsrv. v. Lawrence</u>, No. 2:16-cv-579, ECF No. 136 (Waddoups, J.), ECF Nos. 40 & 44 (Shelby, J.), Becker Suppl. Mem. Ex. 4 (Lawrence Order Den. Mot. to Dismiss) at 1, ECF No. 67-4; Ex. 6 (Lawrence Order Den. Mot. Summ. J.) at 8–18, ECF No. 67-6; <u>cf.</u> <u>Lawrence I</u>, 875 F.3d at 546 n.4 ("[T]here may be a question whether Public Law 280 applies to suits against tribes . . . ."). And the Supreme Court may need to clarify "whether Indian tribes may, by way of a commercial contract with a non-Indian, voluntarily subject themselves to state jurisdiction and state law." <u>Lawrence II</u>, 22 F.4th at 916 (Briscoe, J., dissenting), <u>petition for cert. filed</u>, <u>Becker v. Ute Indian Tribe of the Uintah & Ouray Rsrv.</u> (U.S. Apr. 11, 2022) (No. 21-1340). Point is, Judge Lawrence at least had a "colorable" basis for jurisdiction. <u>Snell</u>, 920 F.2d at 686. This was never an open-and-shut case.

The Tribe's position would make judges liable for damages every time an appellate court held that a trial court mistakenly exercised subject-matter jurisdiction. This is untenable. As Justice William O. Douglas remarked,

> [i]t is necessary to exempt judges from liability for the consequences of their honest mistakes. The judicial function involves an informed exercise of judgment. It is often necessary to choose between differing versions of fact, to reconcile opposing interests, and to decide closely contested issues. Decisions must often be made in the heat of trial. A vigorous and independent mind is needed to perform such delicate tasks. It would be unfair to require a judge to exercise his independent judgment and then to punish him for having exercised it in a manner which, in retrospect, was erroneous. Imposing liability for mistaken, though honest judicial acts, would curb the independent mind and spirit needed to perform judicial functions.

<u>Pierson v. Ray</u>, 386 U.S. 547, 566 (1967) (Douglas, J., dissenting). And as the Tenth Circuit later wrote, judicial immunity exists

> to allow functionaries in the judicial system the latitude to perform their tasks absent the threat of retaliatory § 1983 litigation. Because the judicial system often resolves disputes that the parties cannot, the system portends conflict. Win or lose, a party may seek to litigate the constitutionality of circumstances which required

7

> him to endure a lawsuit or suffer defeat. Such suits by dissatisfied parties might target judges . . . . Though such suits might be satisfying personally for a plaintiff, they could jeopardize the judicial system's ability to function.

Snell, 920 F.2d at 686–87 (citations omitted). Because Judge Lawrence enjoys judicial immunity for his official acts, the Tribe's proposed amendment seeking to hold him personally liable under § 1983 would not survive summary judgment and is therefore futile.

### B. Eleventh-Amendment Immunity for the Official-Capacity Claim

The Eleventh Amendment to the Constitution bars federal lawsuits against states. See U.S. Const. amend. XI; see also Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 268 (1997) ("[W]e have extended a State's protection from suit to suits brought by the State's own citizens."). State sovereign immunity from suit "derives not from the Eleventh Amendment but from the structure of the original Constitution itself." Alden v. Maine, 527 U.S. 706, 728 (1999). And because a suit against a state official (like a judge) in his official capacity is "no different from a suit against the State itself," Eleventh-Amendment principles also apply to official-capacity § 1983 claims. Will v. Mich. Dep't of State Police, 491 U.S. 58, 66–67, 71 (1989).

Yet there is a narrow exception under Ex parte Young, 209 U.S. 123 (1908), to bring an official-capacity claim without running afoul of the Eleventh Amendment. To satisfy this exception, the claim must be for prospective injunctive relief, not retrospective or retroactive monetary relief paid out of the state treasury. The Tribe's proposed § 1983 claim does not fall under the exception. Though the complaint asks for prospective injunctive relief against Judge Lawrence (i.e., for a permanent injunction against the Becker state-court suit), the court has already enjoined the state-court suit and instructed Judge Lawrence to dismiss the action. (Permanent Inj., ECF No. 240.) The issue is therefore moot. The Tribe is left asking for § 1988 attorneys' fees against Judge Lawrence for conduct that has already happened—the definition of "retrospective." Any fees and

expenses would undoubtedly be paid from the Utah state treasury. Ex parte Young does not apply here,[3] so absent a waiver of Utah's sovereign immunity, Judge Lawrence cannot be sued in his official capacity as a state judge.

Utah waived its sovereign immunity when it intervened in a 1975 lawsuit seeking to establish the Tribe's exterior boundaries. See Ute Indian Tribe v. State of Utah (Ute I), 521 F. Supp. 1072, 1078 (D. Utah 1981), aff'd in part and rev'd in part on reh'g en banc, Ute Indian Tribe v. State of Utah (Ute III), 773 F.2d 1087 (10th Cir. 1985) (en banc), modified, Ute Indian Tribe of the Uintah & Ouray Rsrv. v. State of Utah (Ute V), 114 F.3d 1513 (10th Cir. 1997). The Tribe says that this waiver still applies today. Citing Berman v. Denver Tramway Corp., 197 F.2d 946 (10th Cir. 1952), the Tribe claims that this lawsuit flows naturally from the Ute cases and their progeny. It views the suit against Judge Lawrence as an "independent action" to "protect[] the effectiveness" of the Ute III judgment. Berman, 197 F.2d at 950. And it even cited Ute III and Ute V in its proposed amended complaint as part of the "body of federal law" prohibiting state jurisdiction over Indian tribes. (Revised Proposed Second Am. Compl. ¶ 69.xiii., ECF No. 262-1.)

But the Tribe fails to connect Ute III, Ute V, and Berman with the Eleventh Amendment. Utah's waiver of sovereign immunity in the Ute cases does not apply here just because this case also happens to involve a state official, state jurisdiction, and tribal sovereignty. Judge Lawrence (and hence the State of Utah) were not trying to "relitigate[e]" the Ute cases in state court. Berman, 197 F.2d at 950. Rather, this was a contract claim. A state's waiver of its sovereign immunity must be "unequivocal[]." Arbogast v. Kan. Dep't of Lab., 789 F.3d 1174, 1182 (10th Cir. 2015) (quoting Robinson v. Kansas, 295 F.3d 1183, 1189 (10th Cir. 2002)). The Ute waiver is far from

---

[3] Even if the court concluded that Ex parte Young did apply, it has already found that Judge Lawrence had a colorable claim of jurisdiction, so under § 1988(b) his actions were not "clearly in excess of [his] jurisdiction." In other words, the Tribe could not receive attorneys' fees and expenses under either scenario.

9

unequivocal, and the Tribe has failed to show why the court should construe the State's 1975 decision to intervene in a different case as a universal and perpetual waiver of its sovereign immunity. Because of the Eleventh Amendment, the Tribe's proposed amendment seeking to hold Judge Lawrence (and the State) liable under § 1983 would not survive summary judgment and is therefore futile.

## CONCLUSION

The court DENIES the Tribe's Rule 59 motion (ECF No. 244) and DENIES its motion to amend its complaint (ECF No. 243).[4]

DATED this 15th day of July, 2022.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
United States District Judge

---

[4] Because the court finds that the proposed § 1983 claim against Judge Lawrence would be dismissed under judicial immunity and the Eleventh Amendment, it declines to discuss whether Mr. Chapoose and the Tribe in its corporate capacity are "persons" under § 1983.